# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 16, 2004        Decided January 7, 2005

No. 03-5313

MICHAEL J. KOSZOLA,
APPELLANT

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 96cv00174)

———

*Mitchell J. Rotbert* argued the cause and filed the briefs for appellant.

*Jaclyn C. Taner*, Counsel, Federal Deposit Insurance Corporation, argued the cause for appellee. With her on the brief was *Colleen J. Boles*, Senior Counsel. *Kathryn R. Norcross*, Counsel, entered an appearance.

Before: GINSBURG, *Chief Judge*, and GARLAND and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROBERTS.

ROBERTS, *Circuit Judge*: A former employee of the Resolution Trust Corporation (RTC) sued its statutory successor, the Federal Deposit Insurance Corporation (FDIC), alleging that the RTC violated his rights by disciplining and firing him in retaliation for disclosures protected under the RTC Whistle-blower Act, 12 U.S.C. § 1441a(q), and the First Amendment. After a bench trial, the district court entered judgment for the defendant on the ground that the RTC would have taken the same employment actions regardless of any protected disclosures. The plaintiff appeals, but we affirm.

**I.**

The RTC's Office of Inspector General (OIG) was responsible for investigating waste, fraud, and illegal activity within the RTC. In December 1991, OIG hired plaintiff-appellant Michael Koszola as an agent assigned to its Chicago office. Initially, Koszola's supervisors were stationed in Kansas City. Trouble began in June 1992, however, when OIG hired a new Supervisory Agent stationed in Chicago, George Sullivan, to whom Koszola was to report. The introductory meeting between the two did not go well: Sullivan advised David Sherry, the Regional Inspector General back in Kansas City, that Koszola had been "verbally abusive and insubordinate." Mem. Op. at 2. For his part, Koszola told Sherry that Sullivan "lacked investigative skills and management ability." *Id.*

It was downhill after that: Koszola was "openly resentful" of Sullivan's authority and "frequently complained to Sherry about Sullivan's decision making and management skills." *Id.* The resulting tension was exacerbated by incidents of insubordination by Koszola, such as submitting an investigative report almost two months late and ignoring instructions to attend training and to serve a subpoena in a particular manner.

Sullivan also became concerned that Koszola was submitting questionable overtime claims.

Initially, Sherry counseled Sullivan to respond with the carrot rather than the stick, instructing him in December 1992 to give Koszola a favorable performance appraisal in hopes that Koszola would respond positively to praise. Sullivan duly issued a sunny performance report that did not mention his dissatisfaction with Koszola's behavior or attitude. Soon after, however, Sullivan received an angry complaint from the FBI alleging that Koszola, in connection with a joint RTC/FBI investigation in California, had falsely presented himself to a suspect as an FBI agent, questioning the suspect without advising him of his *Miranda* rights. Sullivan immediately removed Koszola from the case. Despite this action, an FBI agent and an Assistant U.S. Attorney later complained that Koszola had contacted witnesses and may have disclosed information about the operation after he had been taken off the case. The OIG opened a formal investigation of the matter.

In January 1993, Koszola wrote Sullivan a brief memorandum concerning RTC contract employees assigned to the copyroom who were allowed to "sit and read" when there was no copying work to be performed. Sullivan determined that the matter was better handled by referring it to RTC contracting officials rather than by launching an OIG investigation. The following month, Jack Anderson's syndicated newspaper column detailed alleged incidents of waste and fraud at the RTC, and the column included charges that some contract employees were paid to "sit and read." The RTC ordered an investigation into possible sources for the column; because of the similar phrasing in Koszola's January memorandum, Sullivan suspected Koszola. At the direction of his superiors, Sullivan retrieved a copy of the memorandum from Koszola's desk while he was away and forwarded it to Sherry.

While retrieving the January memorandum, Sullivan came upon another memorandum addressed to him — one he testified he never received — concerning anonymous allegations that the Chairman of the RTC had been buying RTC properties through straw purchasers. Sullivan forwarded this memorandum to Sherry as well. *See* Tr. Exh. 1-J-2 at 1, 8. A subsequent RTC investigation determined that Koszola discussed the allegations against the Chairman in a May 1993 telephone call to a former RTC employee at her home. *See* Mem. of Proposed Removal at 11–13.

Soon after retrieving the memoranda from Koszola's office, Sullivan became aware of yet another problem. In the course of an investigation of employees suspected of fraudulent billing and attendance reporting, Koszola prepared an investigative report noting that the employees' timekeeper had found no evidence of improper activity. The timekeeper advised Sullivan, however, that Koszola's report was incorrect — she had told Koszola that she believed the employees' records indicated misconduct. After this incident, Sherry testified, he decided to fire Koszola. He placed Koszola on paid administrative leave on April 19, 1993, pending preparation of a formal memorandum proposing Koszola's discharge.

Less than two weeks later, the first investigation of Koszola — concerning his activities in connection with the FBI — was completed. Due to conflicting evidence, the report of the investigation reached no conclusion on the accusation of impersonating an FBI agent, but it did detail how Koszola had not followed proper procedures with respect to reporting his activities, had filed questionable overtime claims, and had disobeyed direct orders. *See* RTC Report of Investigation at 16–27. On September 23, 1993 — five months after Koszola had been placed on administrative leave — he testified with other RTC employees before the Senate Banking Committee about, as described in Koszola's complaint, "waste, fraud and

abuse within RTC operations, ensuing retaliation by the RTC against whistleblowers for speaking out, and the failure of RTC to hold culpable managers accountable." Compl. ¶ 22.

On December 2, 1993, Koszola received a formal memorandum of proposed removal based on charges that he had failed to follow instructions and proper investigative procedures. The memorandum also charged that he had twice improperly released confidential information. It first alleged that he was a source for the February 1993 Jack Anderson column. The memorandum also charged that Koszola breached confidentiality during the May 1993 call to the former RTC employee, when he discussed the allegations about the improper straw purchases. *See* Mem. of Proposed Removal at 11–13.

After Koszola was given an opportunity to reply to the charges, the Deputy Inspector General completed his investigation. On February 2, 1994, the Deputy concluded that charges about failure to follow instructions and correct procedures were supported by the evidence, but found the allegation that Koszola had leaked the "sit and read" memorandum unsupported. The Deputy did conclude, however, that the charge of unauthorized release of confidential information regarding the straw purchases was supported by a preponderance of the evidence. On the basis of the entirety of the record, the Deputy concluded that Koszola's termination was warranted. Koszola filed an appeal with the Merits Systems Protection Board (MSPB), but later withdrew it.

On February 1, 1996, Koszola filed this civil action against the FDIC, the successor to the RTC. He sought legal and equitable relief under the theory that he was fired in retaliation for disclosing "possible violations of law or regulation; gross mismanagement; gross waste of funds; or abuse of authority by the RTC." Compl. ¶ 31. The complaint details numerous disclosures — including the memoranda to his supervisor about contract employees "sitting and reading" and alleged straw

purchases by the RTC Chairman, *id.* ¶¶ 12, 14 — and contends that they contributed to his termination and other disciplinary measures against him. Consequently, the complaint concludes, these personnel decisions violated the RTC Whistleblower Act, 12 U.S.C. § 1441a(q), and the First Amendment. Compl. ¶¶ 34, 39.

On November 8, 2001, the district court concluded a four-day bench trial, after hearing the testimony of nine witnesses, including Koszola, Sullivan, Sherry, and the Deputy Inspector General who conducted the final investigation and recommended Koszola's termination. The district court concluded that even assuming that Koszola had established a prima facie case of retaliation, the FDIC had demonstrated by clear and convincing evidence that the RTC would have fired him regardless of any protected disclosures. Mem. Op. at 9–10. The district court credited the trial testimony of the Deputy Inspector General, who explained that Koszola had been dismissed because he was neither credible nor reliable, and that his poor performance was a product of "his contempt for the organization and for authority" rather than a lack of training. *Id.* at 11. The district court further concluded that, "[i]n light of Plaintiff's testimony on cross-examination," the Deputy's "skepticism was readily understandable, and the Court is convinced that the agency was determined to fire Plaintiff without regard to any allegedly protected disclosures." *Id.*

The court similarly disposed of Koszola's First Amendment claim. Without disputing that a public employee like Koszola enjoys substantial protection from retaliation for exercising his right to free speech, the court observed that the government could defeat such a prima facie claim by showing by a preponderance of the evidence that it would have taken the same action regardless of the protected speech. *Id.* at 14. The district court concluded that because the FDIC had already adduced clear and convincing evidence that the RTC would have fired Koszola

regardless of any protected disclosures, the defendant easily carried its lighter burden under the First Amendment.

Koszola appeals.

## II.

Koszola first challenges the district court's interpretation and application of the RTC Whistleblower Act. Although this court has addressed the threshold requirements for establishing a prima facie case under the Act, *see Taylor v. FDIC*, 132 F.3d 753, 763–66 (D.C. Cir. 1997), we have never addressed whether and how the government may rebut such a showing. As the district court explained, 12 U.S.C. § 1441a(q)(5) provides that the "legal burdens of proof that prevail" under 5 U.S.C. § 1221 also apply under the RTC Act. Pursuant to 5 U.S.C. § 1221(e)(2), the government is not liable if it "demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of [a protected] disclosure."

Koszola does not challenge any of this. He argues instead that, in making its "clear and convincing evidence" evaluation, the district court should have followed a three-prong test adopted by the MSPB and the Federal Circuit in the context of § 1221 actions. Under this test, the reviewing body considers "the strength of the agency's evidence in support of its personnel action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). Koszola contends that this three-factor test is in fact the legal burden that "prevail[s]" under § 1221, and so should govern under § 1441a(q)(5). He also contends that Congress reenacted the RTC Whistleblower Act on December 17, 1993, without any changes to the burden of proof provision, thereby incorporating the test into the statute.

*See* Reply Br. at 2 (citing *Lorillard v. Pons*, 434 U.S. 575, 580–81 (1978)). Koszola concludes that, because the district court "evaluated none of these factors," Koszola Br. at 9, it committed an error of law.

Nothing in the text of 5 U.S.C. § 1221, however, requires the district court to undertake the "clear and convincing" inquiry in terms of any particular legal "test," multi-factor or otherwise. "Clear and convincing evidence" is a common legal standard. *See generally* 9 WIGMORE ON EVIDENCE § 2498, at 424 (Chadbourn rev. 1981) (standard of clear and convincing proof "commonly applied"); *id.* at 424–31 (cataloging instances in which standard is applied). Given the familiarity trial judges have with this standard, we do not think it grounds for reversal that the district court did not explicate its ruling according to a particular gloss.

Koszola's "reenactment" argument does not shake our confidence in this conclusion. His contention that Congress reenacted the RTC Whistleblower Act without change to the burden of proof provision in December 1993 is inaccurate; the 1993 amendments instead *introduced* the reference to the legal burden of proof under § 1221 for the first time. *See* Pub. L. No. 103-204, § 21(b)(2), 107 Stat. 2369, 2406 (Dec. 17, 1993). In any event, we do not think Congress incorporated the three-part test Koszola insists the district court must apply. The very factor upon which Koszola now claims the FDIC's evidence was lacking — treatment of otherwise similarly situated non-whistleblowers — was not even adopted by the MSPB until the year *after* the 1993 amendments. *See Smith v. Dep't of Agriculture*, 64 M.S.P.R. 46, 66 (1994). Although the MSPB had adopted the other two factors by the time of the 1993 amendments, it did so only in the previous year, *see Braga v. Dep't of the Army*, 54 M.S.P.R. 392, 399 (1992), and Koszola has given us no indication that Congress considered — let alone endorsed — the two-part test when passing the 1993 amendments. *See*

*Lorillard*, 434 U.S. at 581–85 (detailing record of Congress's intention to incorporate a contemporaneous construction of a statute); *cf. Am. Fed'n of Labor & Cong. of Indus. Org. v. Brock*, 835 F.2d 912, 915 (D.C. Cir. 1987) (we give weight to a contemporaneous construction of a reenacted statute only when there is indication Congress considered the interpretation).[1]

Koszola also charges that the district court erred by giving dispositive weight to the agency's removal memorandum, rather than engaging in an independent inquiry into the reasons for Koszola's removal. The record does not support any such challenge. The trial took four days and involved nine witnesses, including the principal actors. As is clear from the discussion of the court's factual findings below, *see* Part III, *infra*, the district court explicitly relied on trial testimony in drawing its factual conclusions — not just the removal memorandum.

Nor is there merit to Koszola's argument that the district court erroneously treated his decision not to appeal his termination through the MSPB as a "waiver" of his rights under the RTC Act. The district court merely — and correctly — con-

---

[1] We are particularly reluctant to reverse the district court on the ground that it failed to follow a particular three-part test when it was never asked to do so. Before the district court, Koszola raised neither the three-part test for "clear and convincing evidence" nor his argument for its incorporation into the statute. *See* Plaintiff's Proposed Findings of Fact and Conclusions of Law at 37–40. "For decades, we have emphasized that an argument not made in the lower tribunal is deemed forfeited and will not be entertained absent exceptional circumstances." *United States v. Hylton*, 294 F.3d 130, 135–36 (D.C. Cir. 2002) (citations and internal quotation marks omitted). Because the FDIC did not object to Koszola's presentation of this argument for the first time on appeal, it may have forfeited Koszola's forfeiture, *see Belton v. Washington Metro. Area Transit Auth.*, 20 F.3d 1197, 1202 (D.C. Cir. 1994), but the argument is unavailing in any event.

cluded that it could evaluate the merits of the decision to terminate Koszola only to the extent relevant to the retaliation inquiry. The merits of the decision to fire an employee may play a role in evaluating whether retaliation was a motive; a frivolous reason for firing would support an inference that retaliation was the real reason. That does not mean, however, that a district court may step into the shoes of the MSPB and weigh whether, on balance, an employee should have been fired for the reasons given. The scope of the RTC Act, which addresses only *retaliatory* action, undermines any such suggestion. *See* 12 U.S.C. § 1441a(q)(1). *Cf. Marren v. Dept. of Justice*, 51 M.S.P.R. 632, 638 (1991) (5 U.S.C. § 1221 provides appellate jurisdiction over the merits of an employment decision only to the extent they are material to an allegation of retaliation), *aff'd*, 980 F.2d 745 (Fed. Cir. 1992).

## III.

Koszola also disputes the district court's finding by clear and convincing evidence that the RTC would have fired him regardless of any alleged protected activity. We review findings of fact for clear error. *See* Fed. R. Civ. P. 52(a) ("Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."); *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1207 (D.C. Cir. 2004). We consider a finding of fact to be "clearly erroneous" only if we are "left with a firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 572 (1985). Thus, we will upset the district court's finding of "clear and convincing evidence" in this case only if we are firmly convinced that it was merely probable or unlikely that the RTC would have fired Koszola regardless of any protected disclosures. *Cf. Addington v. Texas*, 441 U.S. 418, 425 (1979) (the burden of "clear and convincing evidence" falls between preponderance of the evidence and proof beyond a reasonable doubt); McCORMICK

ON EVIDENCE § 340 (5th ed.) (approving the suggestion that "clear and convincing evidence" be interpreted as meaning "highly probable").

After referencing the detailed set of charges put forward by the RTC in its memorandum proposing Koszola's removal, the district court concluded that the RTC "based its decision to remove Plaintiff on numerous grounds having nothing to do with Plaintiff's disclosures." Mem. Op. at 12. The court based this conclusion on the testimony of the Deputy Inspector General who recommended termination "because [Koszola] could not be trusted to do his job" and that further training, rehabilitation, or lesser punishment would not remedy the problem. *Id.* at 11. Having witnessed Koszola's testimony and cross-examination, the district court observed that the "skepticism" about Koszola's reliability and prospects for improvement "was readily understandable." *Id.*

We give substantial deference to the district court's evaluation of witness credibility. *See Anderson*, 470 U.S. at 575 ("[w]hen findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings"). Such deference is particularly appropriate in this case, for the disputed question turns on the employer's motivation and subjective assessment of the employee, as well as the parties' interpretations and explanations of events. A trial judge "aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said," *id.*, is in a far better position than this court to make such evaluations.

In an attempt to show that the RTC's decision to fire him was pretextual, Koszola argues that in light of past practice the RTC's response to the incident triggering his termination was suspiciously disproportionate. He observes that prior alleged infractions — such as impersonating an FBI agent and improperly contacting witnesses — did not cause the RTC to initiate

termination proceedings against him. Shortly after an allegedly protected disclosure, however, the RTC moved to fire him for the less grievous error of inaccurately reporting the results of an investigative interview. This disparity, he contends, indicates that retaliation for the disclosure was the reason for his termination.

This reasoning fails to take into account the cumulative effect of Koszola's misconduct. The adage about the straw breaking the camel's back is familiar because of the truth it conveys. Koszola was fired not simply because of the misreporting episode, which in any event was no mere straw. That episode was simply the latest in an accumulation of incidents that exhausted the patience of Koszola's supervisors and left them with no confidence in him. Indeed, the sworn testimony of the Deputy Inspector General — the officer who recommended Koszola's termination — confirms this conclusion. *See* Trial Tr. (Nov. 7, 2001) at 49 ("The things that had occurred were so serious and occurred in the three areas of charges . . . and had somewhat of a pattern . . . of contempt for the organization, contempt for authority . . . that I didn't really see being corrected through a lesser penalty.").

Koszola also challenges the sufficiency of the evidence of his misconduct. He attempts to undermine the foundation of the charge of inaccurate investigative reporting, hypothesizing that it could have been the result of confusion and contending that the Deputy Inspector General admitted as much. The record does not support this interpretation. It indicates that although the Deputy Inspector General observed "there *may* be some confusion" about the matter, he concluded that he found "persuasive" the timekeeper's testimony that Koszola had inaccurately recorded her interview. Handwritten Notes of Deputy Inspector General at J.A. 628 (emphasis added). It is unclear where the investigating officer thought the confusion might lie, but it is clear that he found the timekeeper's testimony more credible

than Koszola's, in part because the timekeeper was "outside" the area of dispute. *Id.* We have no basis for questioning that conclusion.

Koszola also dismisses one incident of insubordination as trivial. *See id.* at 13–14 (characterizing as minor Koszola's decision not to wait to serve an attorney a subpoena). Had the RTC placed dispositive weight on that incident, this characterization might give us pause. But the subpoena spat was plainly just one episode of many in the unhappy saga culminating in Koszola's dismissal. Overall, Koszola describes the removal memorandum as documenting only that he "had been less than slavish in his attention to the details of some of his duties," Koszola Br. at 10, but this simply gives euphemism a bad name. The removal memorandum stated that Koszola's "misconduct created extreme embarrassment for both [an Assistant U.S. Attorney] and the RTC," that his failure to follow proper investigative procedure meant he "cannot be trusted to conduct future investigations without the [RTC] risking ultimate compromise of the case," and that his "serious misrepresentations" in a Report of Investigative Activity undermined the Regional Inspector General's confidence that Koszola could "discharge this essential function of [his] position with integrity." Mem. of Proposed Removal at 2, 7, 10. Like the district court, we need not decide whether Koszola should have been terminated. We need only affirm that the district court did not clearly err in deciding that the RTC showed, by clear and convincing evidence, that it did not fire Koszola in retribution for any protected disclosures.

## IV.

Our determination that the district court's factual conclusions are not clearly erroneous is fatal to Koszola's contention that the court erred by not inquiring into whether he had stated a First Amendment claim. He correctly contends that courts conduct a multifactor inquiry to decide whether a public

employee has established a cause of action under the First Amendment. *See Connick v. Myers*, 461 U.S. 138, 142 (1983); *Hall v. Ford*, 856 F.2d 255, 258 (D.C. Cir. 1988). The government, however, can rebut any such claim by showing by a preponderance of the evidence that it would have taken the same action regardless of any protected speech by the employee. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The statutory and First Amendment counts in Koszola's complaint refer to identical disclosures. *See* Compl. 9–10. The district court correctly reasoned that, because the RTC had already adduced clear and convincing evidence that it would have terminated Koszola regardless of any protected activity, *a fortiori* it would prevail under the First Amendment's less demanding rebuttal standard. As we do not disturb the district court's finding of clear and convincing evidence, its ruling on Koszola's First Amendment claim stands.

In light of our disposition, we have no occasion to reach the FDIC's arguments that Koszola's disclosures were not protected under the RTC Whistleblower Act or the First Amendment.

The judgment of the district court is affirmed.